UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOEL AMBRIZ,<br><br>    Petitioner,<br><br>    v.<br><br>MATTHEW CATE,<br><br>    Respondent. | Case No.: 1:12-cv-01598-SAB (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>(ECF No. 1) |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

**I.**

**RELEVANT HISTORY[1]**

Following a jury trial in the Tulare County Superior Court, Petitioner and two co-defendants were convicted of shooting at an inhabited dwelling, shooting from a motor vehicle at a person, receiving stolen property, and eight counts of assault with a firearm. It was also found true that the crimes were committed for the benefit of a criminal street gang.

///

---

[1] This information is derived from the documents lodged by Respondent on January 31, 2013. ECF No. 20.

1

Petitioner filed a timely notice of appeal. On April 6, 2012, the California Court of Appeal, Fifth Appellate District affirmed the judgment in a reasoned decision.

On May 2, 2012, Petitioner filed a petition for review in the California Supreme Court. The petition was summarily denied on June 27, 2012.

Petitioner filed the instant federal petition for writ of habeas corpus on September 24, 2012. Respondent filed an answer to the petition on January 8, 2013. Petitioner did not file a traverse.

## II.

## STATEMENT OF FACTS[2]

Around 4:00 p.m. on June 23, 2008, the Valdovinos family was startled by six gunshots fired at their home located on North Smith Road. When the shots were fired, Raquel was in the kitchen cooking with her husband Jose and her son Jesus. Raquel's daughter, Maria was in the living room breastfeeding her baby; Maria and her four children were visiting. Maria's daughter was inside watching television and her sons were outside in the backyard. Maria's brothers, Max and Juan Carlos, also were in the backyard. Jesus's girlfriend, Salina E., was resting in the garage, which had been converted into living quarters for Jesus and her.

The first three or four shots were in close succession; after a pause, more shots were fired. One of the shots hit the garage door and another shot hit near the cooler inside the garage next to where Salina E. was standing. The bullets that penetrated the garage made the mirror on the wall wobble.

Immediately upon hearing the shots, Juan Carlos ran to the chainlink fence on the north side of the property and saw a red car heading east on Olive Avenue at a high rate of speed. When Maria heard the shots, she stood up and, while holding her baby, she opened the front door. There was smoke in the air just outside the front door. Maria gathered her children and the entire Valdovinos family went outside to the front of the house, where they shortly were met by police officers.

Maria had parked her minivan directly in front of the Valdovinos house. After the shots were fired, she discovered a bullet hole in the back of her minivan. Juan Carlos's Camaro, also parked in the front of the house, had a bullet hole in it. There was a bullet hole in the garage and gunshot marks on the house. Several other vehicles were parked in front of the house.

At about the same time, Tulare County Sheriff's Detective Jess Cox was conducting an interview at a nearby house on North Newman Road. After Cox finished the interview, he was walking back to his car when he heard six gunshots coming from a northwest direction. As he was getting into his car, Sheriff's Deputy Javier Guerrero pulled alongside Cox in a marked

---

[2] This statement of facts is taken from the state appellate court's decision attached as Exhibit A to Respondent answer, which is presumed correct. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

patrol vehicle.  Cox told Guerrero about the gunshots; Guerrero told Cox he had just seen a vehicle, which he identified in his report as a red, four-door Honda Accord, leaving the area where shots had been fired.

Before meeting up with Cox, Guerrero had seen the red four-door Honda Accord traveling northbound on North Smith Street headed toward Olive Avenue.  The vehicle caught his attention because it failed to stop at a stop; sign and was traveling in excess of 40 miles per hour.  Inside the Accord were three Hispanic males, all with shaved heads.  Guerrero observed the person in the back seat lean out the window and yell something toward the house on the corner of North Smith Road and Olive Avenue.  Guerrero did not stop the vehicle because he was en route to meet Cox.

Cox advised dispatch of the firing of gunshots in the vicinity, while Guerrero broadcast a description of the Accord.  The two officers drove toward North Smith Road and Olive Avenue, which was 15 to 20 seconds away.  Guerero stopped to speak with the people gathered outside the house; Cox drove off to attempt to locate the Accord.

Shortly after 4:00 p.m. that same day, Sheriff's Deputy Carl Bostai saw a reddish brown colored vehicle matching the description broadcast by dispatch.  There were three people in the car.  Bostai made a U-turn and activated his siren in order to make a traffic stop.  Initially, the Honda Accord failed to stop and Bostai had to engage in a high-speed chase.

When the Honda Accord approached a residence on Road 136, it slowed and the passengers looked around.  The rear passenger, Noel, looked back toward the deputy.  Marco was the front seat passenger and Ramirez was driving the Accord.  Bostai saw Marco reach out the front passenger window and throw an object towards the residence on Road 136.  By this time, other officers had arrived on the scene and a felony stop of the vehicle was made.

Bostai searched the area where he had seen Marco throw an object out the window.  He found a .357 revolver in a pile of grass clippings.  When he opened the cylinder, there were six dispensed casings and no live ammunition in the gun.

Bostai also placed a brown paper bag over the suspects' hands to preserve any gunshot residue.  A subsequent test of each of the suspects' hands was negative for gunshot residue.

Sheriff's Detective Bobby Saldana documented a total of five bullet holes at the house on North Smith Road.  He located one in the minivan, one in the Camaro, and a total of three in the garage door and stucco.  There were no casings, indicating the weapon might be a revolver because revolvers do not leave casings after being fired.

Ramirez was interviewed by Sheriff's Detective Rodney Klassen the evening of June 23, 2008, after waiving his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).  Ramirez admitted being a Sureno gang member, but denied having a gun or knowing anything about the events surrounding the shooting.  Ramirez was aware something was thrown out of the car window when the police were chasing him, but denied knowing what was thrown.  Klassen also interviewed Marco after Marco waived his Miranda rights.  Marco told Klassen one of his "homies" had been shot the week before by the people who lived in the house on

3

North Smith Road. Marco acknowledged that the "Nortenos own the whole street" and you only go down the street to cause problems for the Nortenos. When asked if he had a gun, Marco responded, "I don't know."

The gun found on Road 136 was dusted for fingerprints, but none were recovered. The gun had been listed as stolen by the Department of Justice.

The Accord, which belonged to Ramirez's father, was towed and stored in an inside storage area. The day after the shooting the Accord was processed for gunshot residue, which was found on the exterior of the front passenger door and the headliner of the rear seat.

(Ex. A to Answer, Opinion, No. F061401, 2012 WL 1183973, at *1-*2 (Cal.App. 5 Dist.)

### III.

### DISCUSSION

**A.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

**B.  Standard of Review**

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

**C.     Review of Petition**

1.     <u>Insufficient Evidence to Support Convictions of Assault With a Deadly Weapon and Shooting From a Motor Vehicle</u>

Petitioner contends there was insufficient evidence to support his convictions of assault with a deadly weapon and shooting from a motor vehicle. In the last reasoned decision, the California Court of Appeal denied the claim as follows:

> Defendants claims there was insufficient evidence to support the multiple assault with a firearm convictions because there was no evidence they had knowledge of all the occupants in the house at the time they committed the drive-by shooting, the gun was not powerful enough to penetrate the walls of the house, and the gun held only six bullets. In essence, they are contending that they had to have specific knowledge of the presence of all the occupants in the house and the present ability to inflict injury on all eight occupants in order to sustain the convictions.
>
> Defendants also challenge the sufficiency of the evidence to support the shooting from a motor vehicle convictions because they did not aim at a specific person, which they contend is required by section 12034, subdivision (c).
>
> * * *
>
> **The assault convictions**
>
> A conviction for a violation of section 245, subdivision (a)(2) requires proof that (1) a person willfully committed an act which, by its nature, probably and directly would result in the application of physical force on another person; (2) the person committing the act was aware of facts that would lead a reasonable person to realize that, as a direct, natural, and probable result of this act, physical force would be applied to another person; (3) at the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another; and (4) the assault was committed with a firearm. (CALCRIM No. 875.)
>
> Defendants have mistakenly equated present ability to commit a violent injury with specific intent to injure another. The crime of assault does not require a specific intent to cause another injury or even a subjective awareness of the risk that an injury might result from the defendant's conduct. In People v. Williams (2001) 26 Cal.4th 779 (Williams), the California Supreme Court determined the mental state that is necessary to commit this crime: "Accordingly, we hold that assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (Id. At p. 790.)

> It is not necessary to point a firearm directly at the victim in order to commit an assault with a firearm. (People v. Raviart (2001) 93 Cal.App.4th 258, 263.)  The act of drawing a gun into a position in which it could be used when a person is within its range is sufficient to support an assault conviction. (Id. At p. 266.)
>
> * * *
>
> The drive-by shooting here was committed around 4:00 p.m. on June 23, 2008, a Monday. There were several cars parked in front of the Valdovinos house at the time shots were fired. It was obvious the location of the house was in a residential neighborhood. Defendants were aware people lived at the house; they believed the people who lived there had shot one of their "homies." Six shots were fired from a .357 revolver directly toward the house. Two cars in front of the house suffered direct hits. Three bullets were fired toward the north side of the house and the kitchen.
>
> Defendants committed multiple acti rei when they fired six shots at the Valdovinos residence. The bullets from the .357 revolver could have penetrated a window and injured or killed any one of the people inside, contrary to Ramirez's allegation. One of the bullets penetrated the garage and nearly hit Salina E. One bullet landed in the minivan parked directly in front of the living room window. Had the bullet instead penetrated the living room window, Maria and/or her baby could have been shot. Raquel, Jose, and Jesus were in the kitchen, which had a window facing the street on which defendants' car traveled. Juan Carlos and Max were in the backyard, protected only by a chainlink fence, and could see the street in front of the house.
>
> Contrary to the claim of the defendants, the bullets were capable of, and did, penetrate the walls of the residence in that one bullet pierced the garage wall. A defendant who fires multiple wall-piercing bullets at a residence where he knows multiple family members reside, clearly knows that his acts will probably result in a violent injury to the occupants and it can be inferred that he intended such a result. (Trujillo, supra, 181 Cal.App.4th at pp. 1354-1355.)
>
> Furthermore, defendants' contention that the number of assault charges is correlated to the number of bullets fired has been rejected multiple times by multiple courts, and we reject it here. (See e.g., People v. Chinchilla (1997) 52 Cal.App.4th 683, 690-691.)
>
> **The shooting from a motor vehicle convictions**
>
> The defendants' contention that they must have shot at a specific person from their vehicle in order to be convicted of shooting from a motor vehicle has been rejected by this court and we do so again here.
>
> * * *
>
> Here, defendants willfully and maliciously discharged a firearm six times from a motor vehicle at an occupied residence, which constitutes circumstances showing a conscious disregard for the probability such a result, shooting at a person, will occur. Moreover, assault with a firearm is not a lesser included offense of shooting from a motor vehicle; hence, convictions for both crimes stand. (People v. Licas (2007) 41 Cal.4th 362, 370-371.)

(Ex. A to Answer, Opinion, No. F061401, 2012 WL 1183973, at *6-8 (Cal.App. 5 Dist.)

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in

1  the light most favorable to the prosecution, any rational trier of fact could find the essential elements
2  of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Sufficiency
3  claims are judged by the elements defined by state law.  Id. at 324, n. 16.

4  　　　　　Petitioner contends the California Court of Appeal's analysis improperly removed the element
5  requiring that there be a "known potential victim present" from the offenses of assault with a firearm
6  and shooting at a person from a motor vehicle.  More specifically, Petitioner contends the appellate
7  court improperly found that there was no requirement that Petitioner and his co-defendants possess a
8  specific intent to cause another injury, rather it was only required that they committed an intentional
9  act with conscious disregard that such act would likely result in the application of physical force
10 against another.  Petitioner reasons that because he and his co-defendants only shot at vehicles in front
11 of the residence and at the garage, there was not sufficient knowledge of the presence of individuals
12 inside the residence.

13 　　　　　Petitioner also contests the appellate court's finding that California Penal Code section
14 12034(c) does not require specific intent to shoot at a particular person, rather it is only required that
15 the circumstances of the shooting from a vehicle demonstrate a conscious disregard for the probability
16 that such a result will occur.  Petitioner contends there was no evidence that he or his co-defendants
17 posed a specific intent to shot a particular person because there were no individuals outside of the
18 home at the time the shoots took place.

19 　　　　　First, to the extent Petitioner contends the appellate court misinterpreted California law, such
20 claim is not cognizable by way of § 2254.  A determination of state law by a state appellate court is
21 binding in a federal habeas action, Hicks v. Feiock, 485 U.S. 624, 629 (1988), unless the interpretation
22 is an "obvious subterfuge to evade consideration of a federal issue." Mullaney v. Wilbur , 421 U.S.
23 684, 691 n. 11 (1975); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (federal habeas court must respect a
24 state court's application of its own law and must not engage in de novo review).  A federal court has
25 no basis for disputing a state's interpretation of its own law.  Clemons v. Mississippi, 494 U.S. 738,
26 739-740 (1990).

27 　　　　　Furthermore, even if Petitioner raised a proper challenge to the sufficiency of the evidence in
28 this case, the conclusion of the state appellate court was not contrary to, or an unreasonable application


of, clearly established Supreme Court precedent, and was based on a reasonable determination of the facts in light of the record. The fact that one of the six bullets fired from the vehicle did not actually hit and injure or kill an individual inside the residence is of no consequence. It is clear Petitioner and his co-defendants knew individuals could and most likely were inside the residence at the time of the shooting, as five vehicles were parked outside and it was 4:00 p.m. in the afternoon. (RT 332.) The appellate court reasonably determined that the actions of Petitioner and his co-defendants clearly demonstrated a conscious disregard by shooting toward the residence six times causing one bullet to penetrate the garage and almost hitting Salina E, which is sufficient under state law. In addition, two of the vehicles parked directly in front of the residence were hit by bullets and it was just happenstance that the bullets did not actually hit the residence causing injury to any one of the individuals inside. Furthermore, there was substantial evidence presented during trial that Petitioner and his co-defendants knowingly and deliberately entered Sureno territory and committed the drive-by shootings in retaliation for a prior shooting, which further supports the finding they acted with the requisite mens rea. (RT 780-784.) There is no showing the state courts' determination of this issue was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and the appellate court's application of state law is binding on this Court. 28 U.S.C. § 2254. Accordingly, the instant petition for writ of habeas corpus must be denied.

**D.     Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The requirement that a petitioner seek a certificate of appealability is a gate-keeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues, while at the same time affording petitioners an opportunity to persuade the Court that, through full briefing and argument, the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). However, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute, 28 U.S.C. § 2253, provides as follows:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--

>(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

>(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

This Court will issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find it debatable that Petitioner has failed to show an entitlement to federal habeas corpus relief.  Accordingly, the Court declines to issue a certificate of appealability.

//

//

//

//

## IV.
## ORDER

Based on the foregoing,

IT IS HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is directed to enter judgment in favor of Respondent; and
3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **May 9, 2013**

UNITED STATES MAGISTRATE JUDGE